**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CINDY L. DUNLAP, | ) | CASE NO.  3:10-cv-2364 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Cindy L. Dunlap ("Plaintiff"), *pro se*, challenges the final decision of

Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"),

denying Plaintiff's application for a Period of Disability ("POD") and Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the

Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before

the undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

On May 19, 2005, Plaintiff filed an application for a POD and DIB and alleged a disability onset date of August 17, 2000.  (Tr. 21.)  The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 21.)  On June 10, 2008, an ALJ held Plaintiff's hearing.  (Tr. 21.) Plaintiff appeared, was represented by an attorney, and testified.  (Tr. 21.)  A vocational expert ("VE") also appeared and testified.  (Tr. 21.)

The ALJ noted that Plaintiff previously had filed an application for a POD and DIB, and that an ALJ found Plaintiff not disabled in relation to that application through April 7, 2003.  (Tr. 21.)  The ALJ did not reopen the prior application because Plaintiff did not submit new and material evidence, and because the evidence upon which the prior determination was made did not clearly show on its face that there was any error. (Tr. 21.)  The ALJ incorporated by reference the evidentiary review contained in the prior decision except for the inferences and conclusions drawn therefrom.  (Tr. 21.)

On August 29, 2008, the ALJ found Plaintiff not disabled.  (Tr. 32.)  On August 25, 2010, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 6.)  On October 15, 2010, Plaintiff timely filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)

On January 13, 2011, the Commissioner answered Plaintiff's complaint and filed a copy of the administrative record.  (Doc. No. 13.)  Plaintiff was required to file her Brief on the Merits within thirty days thereafter (Doc. No. 7), but Plaintiff failed to do so. On April 4, 2011, the Court ordered Plaintiff to file her Brief on the Merits within fourteen

2

days or show cause why her case should not be dismissed.  (Doc. No. 20.)  On April 22, 2011, the Court received a letter from Plaintiff explaining that certain impairments and pending surgery prevented her from filing her Brief on the Merits.  (Doc. No. 21.)  Plaintiff further requested that she be appointed an attorney and that she have a hearing.  (Doc. No. 21.)

On May 19, 2011, the Court held a hearing to address Plaintiff's overdue Brief on the Merits.  (Doc. No. 25.)  Plaintiff appeared and represented herself *pro se*.  (Doc. No. 25.)  The Court explained to Plaintiff that she was not entitled to a court-appointed attorney and that the Court would not appoint an attorney for her.  (Doc. No. 25.)  The Court suggested how Plaintiff may search for an attorney, but Plaintiff indicated that she already searched for attorneys and none would take her case.  (Doc. No. 25.)  Plaintiff stated that she would proceed without counsel.  (Doc. No. 25.)  Therefore, the Court ordered Plaintiff to file her Brief on the Merits within fourteen days.  (Doc. No. 25.)  The same day, Plaintiff filed her Brief on the Merits.  (Doc. No. 24.)

On July 20, 2011, the Commissioner filed his Brief on the Merits.  (Doc. No. 28.)  Plaintiff did not file a Reply Brief; however, on August 16, 2011, the Court received medical records from Plaintiff via United States Postal Service Priority Mail.  (Doc. No. 30.)  The Court ordered that it would not supplement Plaintiff's Brief on the Merits with the medical records because Plaintiff did not provide any explanation of the relevance of the medical records or what Plaintiff would like the Court to do with them, and Plaintiff did not file a motion to supplement her Brief on the Merits with such an explanation.  (Doc. No. 31.)

On August 25, 2011, Plaintiff filed a letter with the Court "to explain the severity

3

of [her] chronic illness and how it has progressed to become more damaging along with excruciating pain being much worse."  (Doc. No. 32.)  Plaintiff attached to the letter the medical records that she previously submitted to the Court without explanation.  (Doc. No. 32-1.)

Plaintiff asserts two assignments of error:  (1) "the ALJ failed to bring out the information of the physical conditions to the cervical spine"; and (2) the ALJ failed to consider all the illnesses, and the diseases that were noted along with the chronic pain." (Pl.'s Br. 1.)  Plaintiff also contends that new and material evidence regarding Plaintiff's disability claim warrants remand.  (Pl.'s Br. 1.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was 47 years old on the date she was last insured.  (Tr. 29.)  She had at least a high school education and was able to communicate in English.  (Tr. 30.)  She had past relevant work experience as a general office clerk, plastics operator, medical supply aide, housekeeper, and activities director at a nursing home.  (Tr. 29.)

### B.    Medical Evidence

#### 1.    Evidence Between 1998 and April 7, 2003—the Date Plaintiff's Prior Application Was Denied

Starting in 1998, Plaintiff received treatment for hand, shoulder, and neck pain; in 1998 and 1999 she underwent cervical spine surgery.  (Tr. 171-239, 279-97, 343-689, 766-94, 822-1022, 1221-24, 1232-73, 1305-12, 1315-18, 1449-60, 1547-48, 1564-78.)  She was treated by neurologist Eric Schreier, D.O., on a continuous basis until November 2002.  (Tr. 343-689.)  On November 8, 2002, Dr. Schreier noted that

4

Plaintiff's "[s]pinal flexibility has dramatically improved" and that her functioning was stable.  (Tr. 351.)  Dr. Schreier reported that he and Plaintiff discussed the possibility of Plaintiff returning to work, and that Plaintiff had been engaged in vocational rehabilitation.  (Tr. 351.)  Plaintiff did not present to Dr. Schreier again for two years. (Tr. 338.)

Plaintiff began treatment of her systemic lupus symptoms with rheumatologist Steven Behrendsen, M.D., in August 2002.  (Tr. 777-94.)  On November 21 and 25, 2002, Dr. Behrendsen indicated that Plaintiff reported doing better and "feeling quite well."  (Tr. 771, 773.)

Plaintiff received counseling for depression during this time period (Tr. 1128-41), and she last visited her therapist, Melissa Kogge, LISW, in August 2002.  (Tr. 690.)

### 2. Evidence Between April 7, 2003, and December 31, 2005—the Date Plaintiff was Last Insured[1]

Plaintiff continued treatment with Dr. Behrendsen in 2003.  (Tr. 723-65.)  On July 23, 2003, Plaintiff reported feeling well for the past three months.  (Tr. 764.)  On August 16 and 18, 2003, however, Plaintiff presented to the hospital and complained of chest pain and shortness of breath.  (Tr. 240, 255.)  Testing revealed normal results and no active cardiopulmonary disease.  (Tr. 245, 258, 276.)  By December 2003, Plaintiff reported to Dr. Behrendsen that she felt better and had no pain, and that her energy level had increased.  (Tr. 741.)  Dr. Behrendsen noted that Plaintiff's test results "look

---

[1] To be entitled to disability insurance benefits, a claimant must establish that she was disabled prior to her date last insured.  *See* 20 C.F.R. §§ 404.315(a)(1) *and* 404.320(b)(2); *see also Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997).

5

great." (Tr. 740.) On March 4, 2004, Dr. Behrendsen reported that Plaintiff felt "well," had no specific complaints, and did not suffer pain, although she was moderately fatigued. (Tr. 736.) On July 19, 2004, Dr. Behrendsen reported that Plaintiff felt "well," and had no pain or fatigue. (Tr. 733.) Plaintiff cancelled numerous appointments with Dr. Behrendsen between November 2004 and April 2005. (Tr. 730-31).

On December 3, 2004, Plaintiff resumed treatment with Dr. Schreier after more than two years. (Tr. 338, 351.) Dr. Schreier noted that this absence was a "very favorable" sign, but that Plaintiff reported an increase in generalized upper back symptoms over the last few weeks. (Tr. 338.) Dr. Schreier reported upon physical examination that Plaintiff's symptoms were consistent with myofascial tightness, but that he did not find evidence of any new focal or global upper or lower motor neuron dysfunction. (Tr. 339.) Dr. Schreier recommended that Plaintiff take Zoloft. (Tr. 339.)

Also on December 3, 2004, Plaintiff underwent a cervical spine x-ray. (Tr. 278.) The reading radiologist reported that the x-ray showed status post posterior spinal fusion with no acute abnormalities. (Tr. 278.) Through April 2004, Dr. Schreier treated Plaintiff with medication and trigger point injections and repeatedly noted that the injections were helpful and gave Plaintiff a "dramatic benefit." (Tr. 316, 319, 324, 328, 329, 332.)

On July 9, 2004, a nurse at Dr. Schreier's office indicated in a nursing note that Plaintiff called the office by telephone and reported that her lupus had been in remission for a year and that she was looking for a job in accounting. (Tr. 341.)

On June 18, 2005, Plaintiff completed a function report for her disability claim and acknowledge that, with pain pills, she prepared meals, swept floors, did laundry,

6

ironed clothes, shopped for groceries and clothing, went to church, drove, walked, watched television, visited with family, and read.  (Tr. 124-27.)

On July 18, 2005, psychological consultant Michael Wuebker, Ph.D., examined Plaintiff at the request of the Bureau of Disability Determination.  (Tr. 691-96.)  Dr. Wuebker found that Plaintiff's ability to relate to others was unimpaired, as she related adequately to him and his staff and reported no history of problems relating to others in the workplace.  (Tr. 694.)  He noted that Plaintiff's symptoms would "seemingly moderately impact" her ability to maintain attention and concentration to perform simple, repetitive tasks and to withstand the stress of work, although she "attended, concentrated, and persisted throughout this assessment."  (Tr. 695.)  Dr. Wuebker also found that Plaintiff's abilities to understand, remember, and follow simple instructions were not impaired.  (Tr. 695.)

On August 2, 2005, state agency reviewing psychologist Leslie Rudy, Ph.D., assessed Plaintiff's mental residual functional capacity ("RFC") and performed a psychiatric review technique.  (Tr. 697-714.)  Dr. Rudy assessed Plaintiff's mental RFC as follows.  There was insufficient evidence to determine whether Plaintiff could work in coordination with or proximity to others without being distracted by them.  (Tr. 697.)  Plaintiff was moderately limited in her abilities to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.  (Tr. 697-

7

98.)  Plaintiff was not significantly limited in any other areas of functioning.  (Tr. 697-98.)

In his psychiatric review technique, Dr. Rudy evaluated Plaintiff under Listing 12.04 and found that Plaintiff was moderately limited in her ability to maintain concentration, persistence, or pace; mildly limited in her ability to perform activities of daily living; had no difficulties in maintaining social functioning; and had no episodes of decompensation.  (Tr. 711.)

On January 8, 2006, state agency reviewing psychologist Alice Chambly, Psy.D., reviewed and affirmed Dr. Rudy's findings.  (701.)

On August 22, 2005, state agency reviewing physician Charles Derrow assessed Plaintiff's physical RFC as follows.[2]  (Tr. 715-22.)  Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 716.)  She could sit for about 6 hours in an 8-hour work day.  (Tr. 716.)  She could stand and walk for at least 2 hours in an 8-hour workday, but for no more than 1 hour at a time.  (Tr. 716.)  Her ability to push and pull were limited in her upper extremities, as she could not reach, push, or pull above the shoulder level.  (Tr. 716.)  She could never climb ladders, ropes, or scaffolds; and she could only occasionally stoop.  (Tr. 717.)  She had an unlimited ability to perform fine and gross manipulation with her fingers and feel.  (Tr. 718.)  She had no visual or communicative limitations.  (Tr. 718-19.)  She was not able to tolerate extreme temperatures and could never work around hazards such as heights and machinery.  (Tr. 719.)  She had no other environmental limitations.  (Tr. 719.)

---

[2]  Dr. Derrow explained that he adopted his RFC assessment from the ALJ's decision dated April 7, 2003, pursuant to Administrative Ruling 98-4 (the "Drummond Ruling").  (Tr. 716.)

8

On January 9, 2006, state agency reviewing physician Teresita Cruz, M.D., reviewed and affirmed Dr. Derrow's findings.  (Tr. 722.)

### 3.    Evidence Between January 1, 2006, and August 29, 2008—the Date the ALJ Rendered His Decision

The ALJ considered evidence of Plaintiff's medical condition after Plaintiff's date last insured and until the date he rendered his decision.  (Tr. 26-29.)  Although the relevance of this evidence to Plaintiff's ability to perform work before her date last insured is questionable, the evidence arguably could shed light on the severity of Plaintiff's impairments before her date last insured.  As such evidence was part of the record and was addressed by the ALJ, it is summarized as follows.

On June 21, 2006, Gil Butler, Psy.D., and Kimberly Altstaetter, LPCC, COCA, Plaintiff's treating counselors, assessed Plaintiff's mental RFC as follows.  (Tr. 1109.) Plaintiff was extremely limited in her abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 1109.)  She was markedly limited in her abilities to understand, remember, and carry out detailed instructions; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (Tr. 1109.)  She was not significantly limited in her abilities to carry out short, simple instructions; maintain attention and concentration for extended periods; and accept instructions and respond appropriately to criticism from supervisors.  (Tr. 1109.)  She was not limited in any other areas of functioning.  (Tr. 1109.)

On July 21, 2006, consultative examiner John Naveau, M.D., assessed Plaintiff's

physical RFC as follows.  (Tr. 1111-13.)  Plaintiff could not stand or walk.  (Tr. 1113.)

She could sit for only 1 hour in an 8-hour workday.  (Tr. 1113.)  She could lift and carry

only up to 5 pounds.  (Tr. 1113.)  She was markedly limited in her abilities to push, pull,

bend, reach, handle, and perform repetitive foot movements.  (Tr. 1113.)  She had no

visual, hearing, or speaking limitations.  (Tr. 1113.)  In sum, Dr. Naveau indicated that

Plaintiff was unemployable and that her limitations could be expected to last for 12

months or more.  (Tr. 1113.)

Plaintiff presented to the hospital several times in 2006, 2007, and 2008 with

complaints of chest pain.  (*See, e.g.*, Tr. 1023, 1092, 1142.)  Diagnostic testing

repeatedly showed mostly normal results and no acute cardiopulmonary disease.  (Tr.

1040, 1042, 1046, 1089-90, 1164, 1232, 1329-34, 1338, 1344, 1376, 1406.)  Plaintiff

continued treatment for fibromyalgia symptoms, lupus, and neck pain throughout this

time.  (Tr. 1204-20, 1225-32, 1274-92, 1313-14, 1319-1437, 1464-1536, 1555-59,

1589-1604).

On May 15, 2008, Plaintiff's family physician, Dr. Shanthi Satyanarayana, M.D.,

assessed Plaintiff's physical RFC as follows.  (Tr. 1549-54).  Plaintiff could sit, stand,

and walk for only half an hour in an 8-hour workday.  (Tr. 1549.)  She could not use her

hands for simple grasping, pushing, pulling, and performing fine manipulation.  (Tr.

1549.)  She could use her feet to perform repetitive movements and operate foot

controls.  (Tr. 1549.)  She could occasionally lift up to 10 pounds, bend, and squat, but

she could not reach above her shoulders, crawl, or climb.  (Tr. 1549.)  Dr.

Satyanarayana indicated that Plaintiff could not perform light or sedentary work as they

are defined by the Social Security Administration.  (Tr. 1550.)

10

**C.     Hearing Testimony**

**1.     Plaintiff's Hearing and Other Testimony**

Plaintiff's counsel acknowledged during Plaintiff's hearing that the prior ALJ's decision dated April 7, 2003, was binding and that Plaintiff's date last insured was December 31, 2005.  (Tr. 1660.)

Plaintiff testified at her hearing as follows.  She had not driven an automobile in "a couple of years" because she suffered chest pain and shortness of breath, she took "nitro," and she was afraid she would have a heart attack at the wheel and cause an accident.  (Tr. 1614-15.)  Before she stopped driving, she drove only "a couple times" a month.  (Tr. 1615.)  After her second neck surgery in 1998, she was fired from her job because her medical condition prevented her from performing any work.  (Tr. 1618.)  She did not attempt to find other work because she was diagnosed with lupus, which caused her to suffer symptoms including shortness of breath, chest pain, heart palpitations, and fatigue.  (Tr. 1618-19.)  She required oxygen treatment at the hospital once, and treatment for pleurisy once.  (Tr. 1620.)  She used to take Prednisone, but not presently.  (Tr. 1620.)  Her lupus was active (Tr. 1620), and it prevented her from being out in the sun (Tr. 1649).

Plaintiff was diagnosed with fibromyalgia in 2005 (Tr. 1630), which caused her to suffer pain in her neck, shoulders, upper back, lower back, legs, and toes (Tr. 1621).  She rated her pain at 6 to 8 out of 10 in severity.  (Tr. 1630.)  She suffered "excruciating" headache pain that made her nauseous.  (Tr. 1621.)  She took Percocet for her pain (Tr. 1621), but her medication did not provide relief (Tr. 1630).  She did not undergo other treatments for her fibromyalgia, such as aquatic or physical therapy,

11

because "everybody works" so nobody would take her, and because she could not walk far, became short of breath, felt as if she were going to pass out, and became tired. (Tr. 1622.)

Plaintiff had a problem with the mitral valve in her heart, and she suffered a heart attack in 2003.  (Tr. 1622-23.)   She took medication for her heart and saw a cardiologist every few months.  (Tr. 1622-23.)

Plaintiff had knots in her neck and back that caused "excruciating" pain and made her feel sick.  (Tr. 1625-26.)  The neurosurgeon who performed her neck surgeries recommended that she undergo another neck surgery.  (Tr. 1626.)

Plaintiff also suffered anemia.  (Tr. 1644.)  She had her last blood transfusion in 2006 and presently took medication.  (Tr. 1644.)

Plaintiff's "nerves are shot."  (Tr. 1625.)  She described herself as "very emotional," and she felt "worthless."  (Tr. 1625.)  She stopped attending counseling a year prior because she could no longer afford it.  (Tr. 1626.)  She was prescribed Lexapro by the orthopedic physician who oversaw her rehabilitation from her neck surgeries, and she continued to take the Lexapro even though it did not help her.  (Tr. 1627.)  Plaintiff also took Nexium.  (Tr. 1628.)  Her medications made her feel nauseous and prevented her from sleeping.  (Tr. 1628.)

Plaintiff could not lift her arms above her shoulders.  (Tr. 1632.)  She could walk only half a block before she became short of breath and suffered palpitations.  (Tr. 1632.)  She could stand for only 15 minutes.  (Tr. 1632.)  She could sit for only half an hour.  (Tr. 1633.)  She had carpal tunnel surgery in 1998 and, since then, had trouble with her hands—she had trouble with activities such as peeling potatoes and zipping

12

zippers on clothing.  (Tr. 1634.)  She did not do laundry because the laundry room in her house was in the basement, and she could not climb stairs because she became dizzy.  (Tr. 1634.)  She had not been able to sweep, mop, or vacuum since 2000.  (Tr. 1635.)  She cooked only "very little" (Tr. 1635), she could wash dishes for only 15 minutes (Tr. 1636), and she made her bed only twice a week (Tr. 1647).  She did not go shopping often, was unable to get up in the morning to go to church, and did not visit her friends or family.  (Tr. 1637-38.)  She could dress and feed herself, but could not bathe herself without assistance from her mother because she was too weak to do so. (Tr. 1640.)

### 2. The VE's Testimony

The VE testified that Plaintiff could not perform her past relevant work.  (Tr. 1655.)  The ALJ posed the following hypothetical to the VE:

> If you would, assume hypothetically someone who has the same approximate age, education, and work experience as the Claimant, an RFC for light work with the following limitations.  No climbing of ropes, ladders, or scaffolds.  Occasional stooping, no work above the shoulder level.  Not required to maintain concentration on a single task for more than 15 minutes at a time.  No exposure to extreme hot, cold, or humidity.  And no jobs requiring operation of moving machinery.

(Tr. 1653.)  The VE testified that such a person could perform light work as a cashier (for which there were 4,000 jobs in region) and laundry folder (for which there were 3,000 jobs in the region), and that in total there were 25,000 light, unskilled jobs in the regional economy that such a person could perform.  (Tr. 1653.)  The VE also testified that such a person could perform sedentary work as an inspector (for which there were 2,000 jobs in the region), and that there were a total of 10,000 sedentary, unskilled jobs in the region that such a person could perform.  (Tr. 1653.)

13

The ALJ then added to his hypothetical the limitation of being able to lift no more than 25 pounds occasionally and 10 pounds frequently.  (Tr. 1653.)  The VE testified that such a person could still perform the jobs to which he testified.  (Tr. 1653-54.)

The ALJ then added to his hypothetical the limitation of being able to stand and walk for no more than 4 hours in a typical 8-hour workday, with no more than 1 hour of standing and walking at a time.  (Tr. 1654.)  The VE testified that the number of light jobs would be reduced to 6,000 in the region, and that the number of sedentary jobs would not be affected.  (Tr. 1654.)

The ALJ then added to his hypothetical the limitation of no repetitive twisting of the neck.  (Tr. 1654.)  The VE testified that the number of light jobs would be reduced to 5,000 and the number of sedentary jobs would be reduced to 9,000.  (Tr. 1654.)

The ALJ then added to his hypothetical the limitations of occasional squatting and no more than frequent fine manipulation bilaterally.  (Tr. 1654.)  The VE testified that the number of light and sedentary jobs would not be further reduced because of such limitations.  (Tr. 1654.)

The ALJ then added to his hypothetical the limitation of being able to tolerate only low stress work.  (Tr. 1654.)  The VE testified that the number of light jobs would be reduced to 2,000 and the number of sedentary jobs would be reduced to 7,000.  (Tr. 1654-55.)

Plaintiff's attorney asked whether the additional limitation of being unable to use the hands for repetitive, simple grasping, pushing, and pulling would reduce the number of jobs that such a person could perform.  (Tr. 1655.)  The VE responded that the number of jobs would not be reduced further from such a limitation.  (Tr. 1656.)

14

Plaintiff's attorney then asked whether the additional limitation of being able to lift no more than 10 pounds occasionally would reduce the number of jobs to which the VE testified.  (Tr. 1656.)  The VE responded that it would eliminate the light jobs but would not eliminate the sedentary jobs.  (Tr. 1656.)

The VE confirmed that his testimony was consistent with the Dictionary of Occupation Titles.  (Tr. 1655.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that

15

"significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2005.

2.  The claimant had not engaged in substantial gainful activity at any time relevant to this claim through her date last insured.

3.  Through the date last insured, the claimant had the following severe impairments: cervical degenerative disc disease and lumbar degenerative disc disease; fibromyalgia; anemia; systemic lupus (in remission); and a history of depression.

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work . . . except for:  lifting no more than 25 pounds

16

occasionally or 10 pounds frequently; no jobs requiring standing and/or walking more than four hours in an eight-hour day; no climbing ropes, ladders and scaffolding; no repetitive twisting of the neck; no work above the shoulder level; no more than frequent fingering (fine manipulation); no more than occasionally squatting or kneeling; no exposure to temperature extremes or humidity; limited to low stress jobs (no production quotas); no requirement to maintain concentration on a single task for longer than 15 minutes at a time (due to intermittent pain); and no jobs requiring operation of moving machinery.

6.  Through the date last insured, the claimant was unable to perform past relevant work.

. . . . .

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.  Through the date last insured, considering her age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.

11.  The claimant was not under a disability as defined in the Social Security Act, at any time from August 17, 2000, the alleged onset date, through December 31, 2005, the date last insured.

(Tr. 23-31.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial

17

evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

Plaintiff represents herself *pro se*.  Although *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), this Court is not required to make a *pro se* plaintiff's arguments for her.  Such a mandate would "require the courts to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349, at *2 (6th Cir. 2000).

Plaintiff contends that "the ALJ failed to bring out the information of the physical conditions to the cervical spine."  The Court disagrees.  The ALJ found that Plaintiff

18

suffered severe cervical degenerative disc disease.  (Tr. 23.)  He then noted that Plaintiff underwent two neck surgeries in 1998 and 1999 (Tr. 25, 26); and that Plaintiff's treating physician indicated in 2002 that the flexibility in Plaintiff's neck and spine had dramatically improved, there were no new motor deficits or myofascial dysfunction, Plaintiff's reflexes and range of motion were stable, and Plaintiff was looking for work (Tr. 26).  Plaintiff seems to suggest that the ALJ should have considered certain medical evidence of an alleged worsening of Plaintiff's neck condition that was obtained in late 2010 and throughout 2011.  (Pl.'s Br. 2-3.)  This alleged medical evidence was not before the ALJ when he rendered his decision, as the ALJ rendered his decision over two years prior.  Moreover, this evidence does not establish disability on or before the date Plaintiff was last insured—December 31, 2005.  In short, there is no basis to conclude that the ALJ failed to address all of the evidence before him relating to Plaintiff's cervical spine.  Accordingly, this assignment of error lacks merit.

Plaintiff also contends that the ALJ failed to consider all of her impairments.  The Court disagrees.  The ALJ stated that he considered all of Plaintiff's symptoms (Tr. 25), and he specifically discussed Plaintiff's carpal tunnel syndrome, mitral valve prolapse, cervical degenerative disc disease, lumbar degenerative disc disease, fibromyalgia, systemic lupus, depression, and chest pain (Tr. 25-27).  Plaintiff mentioned no other illnesses at her hearing, and Plaintiff does not explain what additional illnesses the ALJ should have addressed.  Plaintiff seems to suggest in her letter filed on August 25, 2011, that she is now blind (Doc. No. 32, at 3), but there was no such evidence before the ALJ.  In short, there is no basis to conclude that the ALJ failed to consider all of Plaintiff's impairments.  Accordingly, this assignment of error lacks merit.

19

Finally, Plaintiff contends that remand is warranted for consideration of new and material evidence.  The Court construes this argument as a request for remand pursuant to sentence six of 42 U.S.C. § 405(g) for the Social Security Administration to consider additional evidence that was not submitted to the Social Security Administration before the ALJ rendered his decision.  For the following reasons, the Court finds that a sentence six remand is not warranted.

Sentence six of 42 U.S.C. § 405(g) permits a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).  Evidence is "new" only if it was not in existence or available to the claimant at the time of the administrative proceeding.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Evidence is "material" only if there is a reasonable probability that the Commissioner would have reached a different conclusion on the claimant's disability claim if presented with it.  *Id.*  "Good cause" is shown  by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.  *Id.*  The burden of showing that remand is appropriate is on the claimant.  *Id.*

Plaintiff did not attach additional medical evidence to her Brief on the Merits, but she did attach such evidence to the letter she filed on August 25, 2011.  That evidence is dated from January to June 2011—well after the ALJ rendered his decision.  (Doc. No. 32-1.)  Plaintiff has neither explained nor provided any basis to conclude that the evidence is material and that there is good cause for failing to obtain and present the evidence to the Social Security Administration before the ALJ rendered his decision.

20

The transcript of Plaintiff's hearing before the ALJ clearly indicates that Plaintiff's attorney did not seek to have the record remain open until such time as other evidence could be made a part of the record, which suggests that Plaintiff considered the evidence before the ALJ complete and sufficient to support her claim.  *See Wills v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam).  And the mere fact that Plaintiff's additional evidence is dated after the ALJ rendered his decision is not a sufficient basis to establish good cause.  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  To the extent that Plaintiff contends the additional evidence shows that her condition worsened and that she suffered new impairments since December 31, 2005, such evidence is not relevant to this case.  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) (per curiam).  Indeed, "[r]eviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition," as such evidence is more appropriately brought before the Social Security Administration as a new claim for disability benefits.  *Id.*  In short, Plaintiff has failed to persuade the Court that remand is warranted.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: October  24, 2011

21